**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| M.H., on behalf of himself and on behalf of the class of juvenile parolees who face revocation proceedings, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 12CV8523 |
| ADAM MONREAL, Chairman of the Illinois Prisoner Review Board; and PAT QUINN, Governor of the State of Illinois, | ) ) ) ) | |
| Defendants. | ) ) | |

**CLASS ACTION COMPLAINT**

Plaintiff M.H., individually and on behalf of the class of all juvenile parolees who face

parole revocation proceedings, by his undersigned attorneys, for his complaint against ADAM

MONREAL, Chairman of the Illinois Prisoner Review Board, and PAT QUINN, Governor of the

State of Illinois, alleges as follows:

**INTRODUCTION**

1.      This is a civil rights class action complaint on behalf of children and teenagers

who have been imprisoned or otherwise deprived of their liberty as a result of the unconstitutional

practices and procedures of the Illinois Prisoner Review Board (hereinafter, the PRB) with respect

to the handling of parole revocation proceedings. The PRB's procedures disregard fairness and

due process and thereby violate the rights of the members of the Plaintiff class under the

Fourteenth Amendment to the United States Constitution and the Illinois Juvenile Court Act.

This court should declare those procedures unlawful and it should enjoin them.

2.      Members of the Plaintiff class are routinely incarcerated without a preliminary

hearing to determine whether there is reason to believe that they have actually violated the

conditions of their parole. As a result, class members are detained, oftentimes for up to a month or more, without any kind of hearing into the legality of their imprisonment.

3.      The full parole revocation hearings that the PRB does conduct are a sham. The PRB keeps secret the evidence it has gathered against the class members. The conditions under which the hearings occur render it impossible for the class members to present witnesses or other evidence on their own behalf, and they are denied the opportunity to confront the evidence used against them at their revocation proceedings. The PRB does not provide counsel to the Plaintiff class members—many of whom have learning disabilities, live with mental illness, and have limited educational attainment— and they are left to navigate the complex revocation proceedings without the support and guidance they obviously need in order to defend themselves.

4.      These unlawful tribunals—akin to kangaroo courts— result in the arbitrary detention and imprisonment of over 1,000 young people throughout the state of Illinois each year.

## JURISDICTION AND VENUE

5.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of the Plaintiffs rights as secured by the Fourteenth Amendment to the United States Constitution.

6.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this complaint occurred in this judicial district.

## PARTIES

7.      M.H. is a seventeen-year-old male who is currently in the custody of the Illinois Department of Juvenile Justice (hereafter, the DJJ). He has been incarcerated since September 13, 2012, for allegedly violating the terms of his parole. He was never provided a preliminary hearing

to determine whether there were reasonable grounds to believe he actually violated the conditions of his parole. As of the filing of this complaint, he is still awaiting his final parole revocation hearing.

8.      Defendant Adam Monreal is the Chairman of the Illinois Prisoner Review Board, the State agency that makes decisions about juvenile parole matters. Monreal directs and supervises the activities of the PRB members, including each of the members who review juvenile parole cases and make decisions about revocation. Monreal is responsible for implementing the rules, regulations, procedures, and standards governing the parole revocation process in the State of Illinois.

9.      Defendant Pat Quinn is the Governor of the State of Illinois and Chief Executive of the state government. As such, Quinn is responsible for the enforcement of State policies by which the rights of the plaintiff class are being violated, as alleged herein. Quinn appointed Mr. Monreal Chairman of the Illinois Prisoner Review Board.

## CLASS ACTION ALLEGATIONS

10.     Plaintiff M.H. brings this suit on his own behalf and on behalf of all juvenile parolees in the State of Illinois who currently or will in the future face parole revocation proceedings.

11.     The class is so numerous that joinder of all members is impractical. Approximately 1,520 children and teenagers are currently on parole and the PRB conducted over 1,132 revocation hearings last year. The class also includes many future members whose names are not known, since new youth are released from detention and placed on parole daily.

12.     There are questions of law and fact common to all class members, including but not limited to whether Illinois parole revocation procedures violate the due process rights of

juvenile parolees, whether juvenile parolees are entitled to appointed counsel at parole revocation

hearings, and whether the hearings, as they are currently being conducted, violate procedural

requirements set forth in the applicable provisions of the Illinois Juvenile Court Act of 1987 (*see*

705 ILCS 405/1-5). Because the practices and procedures challenged in this Complaint apply with

equal force to the named Plaintiff and the other members of the class, the claims of the named

Plaintiff are typical of the class in general.

13.     The named Plaintiff will fairly and adequately represent the interests of the class.

He possesses a strong personal interest in the subject matter of the lawsuit and is represented by

experienced counsel with expertise in civil rights litigation. Counsel have the legal knowledge

and resources to fairly and adequately represent the interests of all class members in this action.

14.     The Defendants have acted or refused to act on grounds generally applicable to the

class: their policies, procedures, practices, acts, and omissions have affected all class members.

Accordingly, final injunctive and declaratory relief is appropriate to the class as a whole.

## ALLEGATIONS OF FACT

### Characteristics of the Class

15.     During their time on parole, many juvenile parolees will be charged with violations

of the terms and conditions of their parole, re-imprisoned, and subjected to parole revocation

proceedings in which their liberty will be at stake.

16.     Children and teenagers are inherently more vulnerable and less able to effectively

represent themselves in complex legal proceedings than their adult counterparts. As described

more fully below, youth on parole also demonstrate significantly lower rates of educational

achievement, and higher rates of mental health disorders and educational and cognitive

disabilities, than non-incarcerated youth. Consequently, juvenile parolees are particularly ill-equipped to assert their due process rights and represent themselves in revocation proceedings.

17. Young people generally enter DJJ custody struggling with low levels of educational achievement, substance abuse problems, and mental health issues. These conditions are likely to be exacerbated during their confinement given the grossly inadequate mental health and educational services provided at DJJ facilities. According to DJJ data, 45% of youth in DJJ custody have identified special education needs, 67% of youth have not graduated from grade school, and 80% need help learning independent learning skills. Seventy-seven percent of youth in DJJ custody had poor school attendance prior to imprisonment. In addition, two-thirds of Illinois youth in custody have diagnosed psychiatric and trauma disorders and 7 out of 10 have a clinical diagnosis of drug dependency. Time spent in DJJ custody can hinder the educational and emotional development of juvenile parolees, leaving them with lower levels of maturity and reasoning skills than the same-age general population.

18. Despite the special needs and inherent vulnerabilities of children and teenagers on parole, juvenile parole proceedings in Illinois are conducted identically to adult parole proceedings. On information and belief, a number of the PRB members responsible for determining whether to revoke the parole of juvenile parolees have little to no background or training in juvenile parole matters.

**Overview of Juvenile Parole Proceedings in Illinois**

19. Most juvenile parolees remain under the supervision of the PRB until they reach age 21. During this time, the PRB retains authority to deprive these youth of their liberty—the agency can initiate revocation proceedings and order the imprisonment of juvenile parolees and/or impose significant restrictions on juvenile parolees' freedom of movement. Parole revocation

proceedings are initiated either for technical parole violations of stated conditions of parole or because new delinquency charges have been filed against a parolee.

20.     In theory, all youth on parole in Illinois are entitled to specific due process protections in these parole revocation proceedings, as set forth under controlling United States Supreme Court precedent and under the Illinois Juvenile Court Act. These protections include:

a. **The right to a preliminary hearing**. All youth on parole are entitled to a timely hearing to determine whether probable cause exists to hold them on the alleged parole violation. Prior to the preliminary hearing, youth must be informed of the charges against them, as well as when and where the preliminary hearing will occur. If a youth waives his right to a preliminary hearing, that waiver must be knowing and voluntary—the youth must fully understand the right at stake and the consequences of waiving that right.

b. **The right to confront witnesses and present evidence during the preliminary hearing**. During the preliminary hearing, juvenile parolees are entitled to present documentary evidence and witnesses who can give relevant information to the PRB official hearing the case. Individuals who present information adverse to the youth must be present for questioning. If a juvenile parolee waives his preliminary hearing, or if the PRB determines that there are reasonable grounds to believe a parole violation did occur, then the parolee is incarcerated in a DJJ facility while he awaits his final parole revocation hearing.

c. **The right to a final revocation hearing**. Prior to the final revocation proceedings, a juvenile parolee has the right to examine the evidence against him. During the hearing, the parolee has the right to be present, in person, before the hearing officer, and to

present witnesses and evidence on his behalf. The parolee also has the right to confront and cross-examine adverse witnesses. PRB officials are not entitled to rely solely on third-party reports, including parole and police officer reports, in revoking parole.

d. **The right to counsel**. Because of their immaturity, lack of educational attainment, and frequent problems with mental illness, youth on parole have a right to counsel appointed at cost to the State at both preliminary and final revocation hearings. Youth who can afford an attorney have the right to retain their own representation at these hearings.

e. **The right to appeal a decision of the PRB**. If the PRB determines that the parolee has violated any of the terms and conditions of parole it must issue a written statement reciting the evidence upon which it relied and the reasons for this determination. The parolee is entitled to receive a copy of this statement. Additionally, youth on parole have a right to receive transcripts of the preliminary and final revocation proceedings, and may appeal the PRB's decision in a standard review or grievance process.

### Denial of Due Process in Illinois Parole Revocation Proceedings

21.     In practice, PRB officials consistently disregard the due process protections listed above. As a result, members of the Plaintiff class are arbitrarily detained and deprived of their right to liberty without adequate process in derogation of the Fourteenth Amendment of the United States Constitution and the Illinois Juvenile Court Act.

22.     The PRB fails to ensure preliminary hearings for class members at the time they are alleged to have violated the conditions of their parole. As a result, class members are imprisoned without any inquiry into the legality of their detention—typically for as long as one month and sometimes for longer—while awaiting their final revocation hearing.

23.     As a matter of course, state officials require that class members sign a form indicating that they have waived their preliminary hearing. However, these waivers are neither fully informed nor voluntary. Prior to signing the waiver form, class members are not instructed as to the purpose of the preliminary hearing, nor are they given guidance from either an attorney or any other advocate. Parole officers regularly misinform class members that signing the waiver form will expedite the revocation process and their release from custody. Class members sign the form believing that it will allow them to return home sooner. In reality, the signature allows the PRB to avoid conducting a preliminary hearing and ensures that the youth will remain incarcerated until the final revocation hearing, regardless of the validity of the alleged parole violation charge.

24.     When the PRB does schedule final parole revocation hearings, it fails to do so in a timely manner. The final revocation hearing is consistently delayed due to the DJJ's policy and practice of transferring juveniles between correctional facilities while they await their final hearing. When they are transferred, the DJJ master files and PRB parole records for these youth frequently remain at the original point of incarceration. Final revocation hearings are further postponed while the master files and parole records are identified and transferred. Youth on parole lack any means by which to object to these transfers or request a more timely hearing, and state law prohibits juvenile offenders from requesting their own master files. The frequent transfer of juvenile parolees causes these youth to be indefinitely detained while awaiting a final revocation hearing.

25.     The final revocation hearings conducted by PRB are rote affairs that contain none of the due process protections guaranteed by the U.S. Constitution and Illinois state law. PRB members make most revocation decisions based solely on the one- to three-page report prepared

8

by the youth's parole officer, which constitutes unreliable hearsay evidence. Hearing officers rarely, if ever, interview the parole officers. Consequently, youth on parole do not have the opportunity to cross-examine the primary (if not the only) witness who presents evidence against them.

26.     The PRB also fails to provide adequate notice to class members as to their right to present evidence on their own behalf. As a result, class members are denied the opportunity to contest their parole officer's allegations by presenting documentary and physical evidence or live witnesses who can provide mitigating or exculpatory evidence on the parolee's behalf. To the extent some class members may be informed of their right to present such evidence, they are unable to do so in light of the PRB's practices and procedures. As a matter of course, the revocation hearings are held in secret, often far from the location of the alleged violation, and neither the PRB hearings officers nor DJJ employees help the class members subpoena witnesses or locate documentary or other physical evidence in their favor. Juvenile parolees lack the capacity to effectively defend themselves from allegations that they violated their conditions of parole.

27.     PRB officers consistently fail to inform youth that they have a right to retain counsel to help them navigate these complex adversarial proceedings. Family members and advocates are regularly denied access to the hearings and prohibited from participating on the youth's behalf. Those attorneys or advocates who do attempt to represent the parolee are not given access to the documents used against the class member in the revocation hearings. Juvenile parolees thus lack any meaningful representation in procedurally complex proceedings in which the class members' liberty is at stake.

28.     Youth on parole are denied a written explanation of the PRB's revocation decisions. In most—if not all—cases there is no written or electronic record or transcript of the revocation proceedings. Even if a transcript of the proceedings did exist, the PRB's revocation decisions are unreviewable. There is no appeal mechanism or grievance procedure by which juvenile parolees can seek a review of PRB decisions. The lack of an appellate process ensures the continuing insulation of the PRB's juvenile parole revocation process and prevents parolees from challenging the procedures and the outcome of the revocation hearing.

29.     Throughout this revocation process, the juvenile class members are severely hampered by their lack of development, low rates of educational achievement and literacy levels, and high rates of mental health disorders and educational and cognitive disabilities. As a consequence, these class members are unable to effectively speak for themselves at parole hearings.

30.     The hearings are complex. Fairly conducted, they should involve the presentation of documentary evidence and mitigating circumstances, the cross-examination of witnesses, and oral advocacy, as described above. The juvenile class members, who are almost uniformly indigent, cannot possibly present factual defenses and mitigating evidence without the assistance of competent, fully prepared legal counsel.

31.     The PRB lacks any mechanism by which youth on parole can request an appointed attorney. The State would categorically deny any request for appointed counsel because there is no system or funds in place to secure such an appointment. In the circumstances faced by the class members in Illinois juvenile parole revocation proceedings, the failure to provide appointed counsel to the class members contravenes due process.

32.     The systematic and on-going violations described in the preceding paragraphs result in the arbitrary imprisonment of hundreds of youth in Illinois facilities. Youth are consistently subjected to months of unreviewable detention in juvenile prisons without process or remedy. As a result of the PRB's practices and procedures, the members of the Plaintiff class have suffered and continue to suffer well-established violations of their right to due process under the Fourteenth Amendment of the U.S. Constitution, as well as under the Illinois Juvenile Court Act, 705 ILCS 405/1-5.

**M.H.'s Parole Proceedings are in Violation of His Right to Adequate
Due Process, His Right to Counsel Under the Fourteenth Amendment
of the U.S. Constitution, and the Illinois Juvenile Court Act**

33.     Plaintiff M.H. is a seventeen-year-old male whom mental health professionals have deemed "moderately cognitively impaired" and who has been repeatedly institutionalized for substance abuse and mental health treatment.

34.     From October to April 2012, M.H. was incarcerated in DJJ custody for possession of a controlled substance. The PRB granted M.H. parole on April 19, 2012. The terms of M.H.'s parole require him to enroll in an alternative high school miles from his home, attend substance abuse counseling, secure employment, meet with a caseworker once every week, meet with a mentor twice a week, and spend Friday and Saturdays engaged in "job-readiness" programs. He will remain on parole until he is 21 years old.

35.     On September 7, 2012, M.H.'s parole officer made the determination that M.H. had violated the terms of parole by failing to stay in touch with his parole officer. After a warrant for M.H.'s arrest was issued, he was taken into state custody on September 13, 2012. He is currently imprisoned in the Illinois Youth Center (I.Y.C.)-Chicago while awaiting his parole revocation hearing.

36.     The PRB caused M.H. to involuntarily waive his right to a preliminary hearing. After M.H. was detained, a parole officer presented him with a Parole Violation Report and instructed him to sign it to indicate that he waived his preliminary hearing. M.H. did not understand the form he signed. M.H. believed that his signature would ensure the expedited scheduling of his final parole revocation hearing. M.H. signed the form because he was told it would help him return home quickly. If M.H. fully understood his rights, he would have opted to have a preliminary hearing during which he would have sought to be represented by appointed counsel.

37.     M.H. has also been repeatedly denied his right to a timely final revocation hearing. Initially, his final revocation hearing was scheduled on September 20, 2012, at I.Y.C.-Saint Charles. On September 19, state officials informed him that because of an administrative error, the PRB would be unable to hear his case on September 20, but that his case would be heard at the next available PRB hearing date in early October. However, days before the early October hearing date, he was transferred I.Y.C.-Chicago, even though M.H. had informed his counselor at I.Y.C.-St. Charles that he wished to remain at the facility and proceed with the scheduled parole hearing.

38.     When he arrived at I.Y.C.-Chicago, M.H.'s parole hearing was delayed an additional three weeks. He is currently scheduled to have a parole revocation hearing on October 24, 2012. By this time he will have been imprisoned without a preliminary or final revocation hearing for over 6 weeks.

39.     Given the PRB's policy of denying parolees appointed counsel, when his parole revocation hearing finally occurs, M.H. will be unrepresented. He will not have the opportunity to examine the evidence his parole officer has gathered against him, nor will be able to confront

witnesses or present mitigating and exculpatory evidence. The proceedings against him will follow the pattern alleged in paragraphs 21 through 32, above.

40.     As a result of the PRB's unconstitutional parole revocation procedures, M.H.'s rights to adequate due process have been and are continuing to be violated. Due to frequent transfers and delays, he has endured weeks of unlawful imprisonment without a hearing. When he does finally receive a hearing on October 24, it will be without the guarantees of due process or right to counsel prescribed by the Fourteenth Amendment of the U.S. Constitution and Illinois state law.

41.     For as long as M.H. remains on parole in Illinois he faces an ongoing imminent risk of being subjected to the PRB's unconstitutional parole procedures.

## COUNT I
### 42 U.S.C. § 1983 Right to Due Process

42.     Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth in this Count.

43.     Through this Count, Plaintiff seeks injunctive and declaratory relief against all Defendants to prevent the continued violation of the rights of Plaintiff and the class he represents.

44.     By continuing to conduct parole revocation proceedings in the manner alleged in this Complaint, and specifically, by failing to provide Plaintiff and the class with adequate notice of their due process rights; by failing to conduct preliminary revocation hearings and timely final revocation hearings; by prohibiting Plaintiff and the class from presenting mitigating and exculpatory evidence; by preventing the participation of parents, guardians, and retained counsel in the revocation proceedings; by denying Plaintiff and the class the right to confront adverse witnesses at their final revocation proceedings; and by denying Plaintiff and the class appointed counsel during all stages of the parole revocation proceedings, Defendants are in continuous

13

violation of Plaintiff's rights and the rights of the members of the class under the Fourteenth Amendment to the United States Constitution.

## COUNT II
### State Law – Violation of Illinois Juvenile Court Act, 705 ILCS 405/1-1 *et seq.*

45.     Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth in this Count.

46.     Through this Count, Plaintiff seeks injunctive and declaratory relief against all Defendants to prevent the continued violation of the rights of Plaintiff and the class he represents.

47.     By continuing to conduct parole proceedings in the manner alleged in this Complaint, and specifically, by denying Plaintiff and the class appointed counsel and adequate procedural due process during all stages of their parole revocation proceedings, Defendants are in continuous violation of Plaintiff's rights and the rights of the members of the class under the Illinois Juvenile Court Act of 1987, 705 ILCS 405/1-1 *et seq*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the class he represents respectfully prays that this Court enter judgment in its favor and against the Defendants in the following manner:

1.     Enter an Order certifying a class of all juvenile parolees in the State of Illinois who currently or will in the future face parole revocation proceedings.

2.     Adjudge and declare that the policies, practices, and conduct described in this Complaint are in violation of the rights of Plaintiff and the class he represents under the Fourteenth Amendment of the United States Constitution and the Illinois Juvenile Court Act.

3.     Preliminary and permanently enjoin the Defendants, their agents, employees, and all persons under their control from subjecting Plaintiff and the class he represents from the unlawful policies, practices, and conduct described in this Complaint.

4. Retain jurisdiction of this case until such time as the Defendants have fully complied with all orders of the Court, and there is reasonable assurance that the Defendants will continue to comply in the future with these orders.

5. Award Plaintiff reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

6. Award Plaintiff and the class he represents such other and further relief as the Court deems just and proper.

Respectfully submitted,

**M.H., individually and on behalf of the class of juvenile parolees who face parole revocation proceedings**

By:_____/s/___Alexa Van Brunt_____
One of the class attorneys

Locke E. Bowman
Alexa A. Van Brunt
Sheila A. Bedi (*Pro hac vice* motion to be filed)
Roderick MacArthur Justice Center
Northwestern University School of Law
357 E. Chicago Avenue
Chicago, Illinois 60611
(312) 503-0844