IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| M.H., on behalf of himself and on behalf of the class of juvenile parolees who face revocation proceedings,<br><br>Plaintiffs,<br><br>v.<br><br>ADAM MONREAL, Chairman of the Illinois Prisoner Review Board; CANDICE JONES, Director of the Department of Juvenile Justice,<br><br>Defendants. | No. 12-cv-08523<br><br>Judge Andrea R. Wood |

## CONSENT DECREE

On October 23, 2012, Plaintiffs filed the above-captioned suit asserting constitutional and state law challenges to the parole revocation process as it pertains to youth who are placed on parole throughout the State of Illinois. In order to resolve the allegations in the Complaint, the Parties have entered into the following Consent Decree.

### A. SETTLEMENT CLASS & DEFINITIONS

1. The parties agree that to avoid costly and protracted litigation, the claims against the Defendants should be resolved by this Consent Decree. By entering into this Consent Decree, or by taking any action in accordance with it, the Defendants do not admit any of the allegations contained in Plaintiffs' complaint, nor do Defendants admit liability for any purposes. The parties understand that the Defendants enter into this Consent Decree solely as to the parole revocation process for youth committed to the Illinois Department of Juvenile Justice through the juvenile courts of the State of Illinois, and its terms are not intended to apply outside this context.

2. The Parties agree to a settlement class comprised of all juvenile parolees in the State of Illinois who currently or who will in the future face parole revocation proceedings.

3. The Defendants in this lawsuit are the Chairman of the Illinois Prisoner Review Board (PRB) and the Director of the Department of Juvenile Justice (DJJ), both of whom were sued in their official capacities. The Parties intend for this Consent Decree to bind these state officials, their assigns and their successors.

4. The term "youth" refers to any individual who is committed to DJJ custody pursuant to the Juvenile Court Act and:

(i) Is released from a DJJ facility on parole or aftercare status (hereafter "parole");

(ii) Is in physical custody of DJJ on charges of a violation of the conditions of parole; and

(iii) Who faces a continued risk of confinement as a result of parole revocation proceedings.

5. An "Eligible Youth" refers to any youth who is under the age of 18 at the time of the alleged parole violation.

6. A "Screened Eligible Youth" is defined as any youth aged 18 or older at the time of the alleged parole violation who:

(i) Has a timely and colorable claim that that he or she has not committed the alleged violation of the conditions upon which he or she is at liberty; or

(ii) Has a claim that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and the reasons are complex or otherwise difficult to develop or present; or

(iii) Lacks the capacity to speak effectively for himself or herself before a hearing officer or the Prisoner Review Board.

7. An "Ineligible Youth" is a youth who is not an Eligible Youth or a Screened Eligible Youth.

8. The terms "serve" or "service" refer to the process during which a youth receives a copy of his or her Parole Violation Report and the accompanying Notice of Rights.

**B. REMEDIAL MEASURES**

9. The Defendants shall conduct all youth parole revocation proceedings in compliance with the requirements of the U.S. Constitution, all applicable state statutes and *Faheem-El v. Klincar* (N.D. Ill. No. 85-3008) and *Downie v. Klincar* (N.D. Ill. No. 89 C 2937).

10. The Defendants shall serve all youth within one business day of entering DJJ physical custody.

11. The DJJ staff shall provide each youth with "Know Your Rights" materials related to the parole revocation process. These materials shall be developed by Class Counsel, subject to reasonable prior approval by Defendants.

12. The DJJ shall accept contact information of attorneys who have indicated a willingness to provide pro bono representation to youth during the parole process and post that information in an area accessible to the youth in DJJ facilities.

13. The Defendants shall appoint counsel to represent each Eligible Youth and Screened Eligible Youth.

14. The Defendants will provide sufficient resources so that each Eligible Youth and Screened Eligible Youth is represented by appointed, state-funded counsel ("appointed counsel") at every stage of the parole process after counsel is appointed, including preliminary parole hearings, final revocation hearings and any appeals or requests for reconsideration, as set forth in this Consent Decree. The DJJ shall, pursuant to any reasonable relevant policies and procedures,

reasonably accommodate requests by youth to communicate with prospective or retained counsel throughout the parole revocation process. Subject to any reasonable relevant policies and procedures, youth may communicate confidentially with prospective, retained or appointed counsel.

15. The Defendants shall not permit Eligible Youth to waive appointed counsel during parole proceedings, except that, at the request of the Eligible Youth, he or she may decline to be represented by appointed counsel and may instead be represented by counsel that he or she has retained. Any other youth for whom appointed counsel has been provided, including Screened Eligible Youth, may waive appointed counsel during parole hearings and may alternatively choose to retain alternate counsel. In the event a youth elects not to be represented by appointed counsel, the Defendants have no obligation to pay for retained counsel.

16. The Defendants shall provide all Eligible Youth in DJJ custody awaiting parole revocation proceedings appointed counsel as soon as possible but in no case later than 5 business days after the youth is served or after the youth's entry into DJJ custody, whichever occurs later. The Defendants shall provide all Screened Eligible Youth appointed counsel within 3 business days of the determination.

17. The DJJ staff shall be responsible for making an initial determination regarding whether a youth meets the criterion described in Paragraph 6(iii) regarding a youth's capacity to speak effectively. The DJJ staff shall make this determination on an individualized, case-by-case basis, and the determination shall be made within 3 business days of the youth's entry into DJJ custody. The determination may be made in consultation with DJJ mental health, medical and educational professionals. This determination shall be made based upon an in-person assessment

of the youth and a review of all available pertinent information in the youth's DJJ Master Record, Medical, Mental Health, and Educational files, including but not limited to:

(i) Documented developmental and/or learning disabilities that impair a youth's life functioning including basic comprehension, mental and emotional processing such as thinking, concentrating, following directions and interacting with others, and communication;

(ii) Documented physical disabilities impairing a youth's ability to communicate and/or comprehend alleged violations, understand legal proceedings and advocate for him or herself, including significant speech, vision, or hearing impairments;

(iii) Mental illness, whether currently treated or untreated, that currently impairs the youth's orientation to time, place and circumstances, and/or basic communication skills, including, but not limited to, an active state of psychosis;

(iv) Active substance abuse that currently impairs the youth's orientation to time, place and circumstances, and/or basic communication skills, at the time the youth has arrived at a DJJ reception center;

(v) Lack of basic English language skills necessary to comprehend the alleged violations and/or communicate in English at a hearing, including youth who required translation services during any prior commitments to DJJ custody; and

(vi) Documentation from a youth's Individualized Education Plan setting forth a requirement for the youth to have assistance in communication, reading comprehension, and/or mental processing.

18. The DJJ shall develop a form that will be completed by the DJJ staff during each screening as set forth in Paragraph 17. The form shall include, at a minimum, a description of the information considered by DJJ staff in screening the youth and the DJJ's determination.

19. The Defendants shall provide each youth a preliminary parole hearing to determine whether there is probable cause to believe the alleged parole violation was committed, except that, if the alleged parole violation is based upon a new criminal charge against the youth, and the court presiding over the criminal case finds that there is probable cause that the youth has committed the crime, the PRB may rely upon that probable cause finding and need not hold a preliminary parole hearing. The preliminary parole hearing must be scheduled within 10 business

5

days of the youth entering DJJ custody pursuant to a parole violation report. The preliminary parole hearings shall be conducted by a PRB hearing officer.

20. Defendants will provide the youth and/or their attorneys all evidence that will be used against the youth during the parole revocation proceedings as follows:

(i) Prior to the effective date of the provisions providing for the screening of youth and the appointment of counsel, within 3 business days of service or within 2 business days of the DJJ's receipt of the evidence, whichever occurs later;

(ii) For Eligible Youth, within 2 business days of the appointment of counsel, or within 2 business days of the DJJ's receipt of the evidence, whichever occurs later;

(iii) For Screened Eligible Youth who are appointed attorneys based upon the DJJ staff's initial determination regarding whether a youth meets the criterion described in Paragraph 6(iii), within 2 business days of the appointment of counsel, or within 2 business days of the DJJ's receipt of the evidence, whichever occurs later; and

(iv) For all other youth, within 2 business days of the DJJ staff's initial determination regarding whether the youth meets the criterion described in Paragraph 6(iii), or within 2 business days of the receipt of the DJJ's evidence, whichever occurs later;

*OR*

(v) If the Defendants elect to provide appointed counsel for all youth, within 2 business days of the appointment of counsel, or within 2 business days of the DJJ's receipt of the evidence, whichever occurs later.

21. Either during or in advance of the preliminary parole hearing, the PRB hearing officer shall screen each youth who has not been assigned an appointed attorney to determine if the youth:

i. Has a timely and colorable claim that he or she has not committed the alleged violation of the conditions upon which he or she is at liberty; or

ii. Has a claim that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and the reasons are complex or otherwise difficult to develop or present; or

6

      iii.     Lacks the capacity to speak effectively for himself or herself before the PRB hearing officer or the Prisoner Review Board.

*See Gagnon v. Scarpelli*, 411 U.S. 778, 790-91 (1973) (rejecting "inflexible constitutional rule with respect to the requirement of counsel" in favor of a decision made "on a case-by-case basis in the exercise of a sound discretion by the state authority charged with the responsibility for administering the probation and parole system"). The PRB hearing officer shall have "considerable discretion" in conducting the screening. *See id.* at 790. If the PRB hearing officer finds that the youth meets any of the criteria listed above and the PRB hearing officer has sufficient information to make a finding of "no probable cause," the PRB hearing officer shall make a "no probable cause" determination, and the youth's parole revocation proceedings will terminate. If the PRB hearing officer determines that the youth meets any of the criteria above, and the PRB hearing officer cannot make a "no probable cause" determination at this time, the youth shall be deemed a Screened Eligible Youth, and the Defendants shall provide the youth with appointed counsel. Ineligible Youth have the right to request reconsideration of the eligibility determination at their preliminary parole hearing and/or final parole revocation hearing.

    22.     Youth who are deemed eligible by the PRB hearing officer shall have their preliminary parole hearings re-scheduled within 10 business days of the eligibility determination. During the rescheduled preliminary parole hearing, the PRB hearing officer is prohibited from considering the information that he or she learned during the screening process set forth in Paragraph 21.

    23.     The PRB shall develop a form that will be completed by the PRB hearing officer during each PRB screening as set forth in Paragraph 21. The form shall include, at a minimum, a description of the information considered by the PRB hearing officer in screening the youth for appointed counsel, an indication of whether the youth was determined to be eligible or ineligible

for appointed counsel, and a brief rationale for that decision. This form shall be kept in a file that is separate from the youth's parole file. This information shall be made available to the Court-appointed Monitor, for the sole purpose of evaluating the Defendants' compliance with this Consent Decree. If the PRB hearing officer or the PRB denies this request, the grounds for refusal should be documented succinctly.

24. The Defendants will provide youth or their attorneys with a written probable cause determination.

25. If the PRB hearing officer finds probable cause at the preliminary parole hearing of an Ineligible Youth, the PRB hearing officer shall inform the Ineligible Youth of his or her right to request that the PRB hearing officer recommend to the PRB that his or her parole violation warrant be withdrawn pending a final revocation hearing. If the Ineligible Youth exercises this option, the PRB hearing officer shall allow him or her to present evidence and/or argue that the parole violation warrant should be withdrawn pending a final revocation hearing. The PRB hearing officer shall communicate the Ineligible Youth's request and the PRB hearing officer's recommendation to the PRB.

26. Except as set forth in this Consent Decree, each youth shall receive a final parole revocation hearing to determine whether a parole violation occurred and whether revocation is appropriate. If the violation is a matter of public record, is uncontested, or if the youth is found guilty of or pleads guilty to a new criminal violation, the violation shall be deemed to have occurred. In that event, at the final revocation hearing, the PRB hearing officer shall consider only any argument or evidence (aggravating or mitigating) regarding whether or not the youth's parole should be revoked for the violation.

27. This Consent Decree shall not apply to an individual when all of the following are satisfied: (1) he or she is convicted of a new criminal charge; (2) he or she is sentenced to the Department of Corrections; and (3) the DJJ requests discharge of his or her sentence with DJJ.

28. The Defendants shall make every effort to cause each youth to be presented for a final revocation hearing at the next scheduled PRB hearing date. In any event, a final revocation hearing must occur within 45 calendar days after a youth enters custody except where one of the following makes that date impracticable: (1) postponement(s) requested by a youth's attorney, by an Ineligible Youth, or a youth choosing to proceed without counsel; (2) an Ineligible Youth requests reconsideration of the denial of counsel at his final revocation hearing, and that request is granted; or (3) other exceptional or emergency circumstances. In that event, a final revocation hearing shall be rescheduled as soon as is practicable, unless the youth or his attorney requests that the hearing be continued.

29. The Defendants will provide the youth or their attorneys with a written explanation of the PRB's decision in the final parole revocation hearing. The written explanation must include a description and assessment of the evidence and a brief statement describing how the evidence meets the preponderance of the evidence standard.

30. The PRB will establish an appeals process so that a youth may appeal the PRB's decision in the parole revocation proceeding. The PRB shall state in writing in a decision revoking parole that "revocation may be appealed." A panel of three PRB members who were not involved in the initial revocation decision shall review any appeals and issue a decision as soon as practical but no later than 21 calendar days after receiving the appeal. A decision by the three PRB members is final.

31. Representation by appointed counsel shall terminate after the PRB's decision becomes final: upon expiration of time to seek reconsideration or appeal or upon the resolution of any request for reconsideration or appeal.

32. An independent monitor ("Monitor") charged with reporting to the Court on the Defendants' compliance with the Consent Decree and with providing the Defendants with technical assistance to promote compliance with the Consent Decree shall be jointly selected by the parties. The Monitor shall have demonstrable qualifications to monitor the terms of this Consent Decree. Such qualifications may include substantial experience in one or more of the following areas: juvenile/criminal justice, the provision of legal services to children, the provision of juvenile or criminal defense services and the requirements of due process. If the Parties cannot come to consensus, each Party will submit three names of qualified individuals to the Court and the Court will make the final selection. The reasonable cost for the Monitor's fees and expenses will be borne by the Defendants.

33. The Defendants shall provide the Monitor and Class Counsel with reasonable access to all class members. The Defendants shall provide the Monitor with access to the hearings governed by this Consent Decree and shall permit Class Counsel to observe such hearings unless the youth or a witness objects. The Monitor shall also have reasonable opportunities to interview appointed counsel and the members of the Defendants' staff who have an essential role in executing the requirements of this Consent Decree. Counsel for the Defendants and Class Counsel may be present at interviews of staff and contractors and during hearings governed by this decree.

34. The Defendants shall provide all facility records related to the Defendants' compliance with this Consent Decree to the Monitor upon request, except as provided in

Paragraph 34. Defendants shall, upon written request, provide the following types of documents to Class Counsel (Attorneys' Eyes Only): parole violation reports, any documentary evidence presented in parole proceedings, any written decisions or recommendations by the PRB or a PRB hearing officer related to the parole violation charge(s) at issue, and, unless Defendants choose to appoint counsel to all youth, the forms referenced in paragraphs 18 and 23. If Plaintiffs believe that additional types of documents are necessary in order to evaluate the Defendants' substantial compliance with the Consent Decree, Plaintiffs shall submit a written request to Defendants and explain why they are necessary for their review; if Defendants refuse Plaintiffs' request, Plaintiffs may seek an order from the Court directing the Defendants to provide the records if Plaintiffs demonstrate that the request was reasonable and that the particular requested records are necessary to evaluate the Defendants' substantial compliance with the Consent Decree. The Monitor and Class Counsel will comply with all applicable federal and state laws with regard to confidentiality of class members' records and information.

35. Medical and mental health records shall be provided only as follows:

(i) If the Defendants elect to provide appointed counsel to all youth, neither the Monitor nor Class Counsel shall have access to medical and mental health records;

(ii) Otherwise, medical and mental health records shall not be provided without consent as required by applicable state and federal laws, and shall be provided only under the following circumstances:

   a. Subject to the foregoing, in the event the Monitor believes that access to certain medical or mental health records is required to ensure compliance with this Consent Decree, and the DJJ has not provided such records for any reason, the Monitor and/or Class Counsel may petition the Court for an order requiring

release of the records to the court for an in-camera review to determine whether the records should be provided to the Monitor.

    b. Subject to the foregoing, Plaintiffs may seek an order from the Court directing the DJJ to provide medical and/or mental health records to Class Counsel (Attorneys' Eyes Only) in the event that they provide a sworn declaration to the Court and to the Defendants attesting and providing support for the following: (1) they have reasonable belief that the Defendants are committing a systemic and substantial violation of the Consent Decree; and (2) the information contained in the specific records requested (medical or mental health records) is necessary in order to evaluate the Defendants' substantial compliance with the Consent Decree. Plaintiffs bear the burden to demonstrate that all records requested are necessary to their evaluation.

36. At any time, if the Monitor believes that Defendants are not in compliance with any substantive provision of this Consent Decree, the Monitor shall promptly notify the parties in writing and recommend action steps that, if completed, would attain compliance ("Compliance Steps").

37. On a quarterly basis, the Monitor will submit a comprehensive compliance report to the Court. The Monitor shall provide the report in draft form to the parties for comments at least two weeks before filing the report with the Court. The Monitor's report shall track the Defendants' compliance with each substantive provision of this Consent Decree, including whether systemic barriers prevent appointed counsel from providing zealous representation. If the Defendants are not in compliance with any substantive provision of this Consent Decree, the Monitor's reports shall include Compliance Steps.

38. At any time, if Plaintiffs believe that the Defendants are not in compliance with any substantive provision of this Consent Decree, Plaintiffs shall promptly notify the Monitor (during the Monitor's appointment) and Defendants in writing. The parties shall conduct good faith discussions, which may involve the Monitor, to resolve the dispute. If the parties are unable to reach agreement within 21 calendar days of Plaintiffs' written notice, Plaintiffs may seek Court enforcement, unless otherwise agreed by the parties.

39. The Independent Monitoring Provisions of this Consent Decree set forth in Paragraph(s) 31-36 shall terminate as to a substantive provision when, according to the Monitor's reports, the Defendants have been in substantial compliance with that provision for eighteen months. Upon the termination of the Independent Monitoring Provisions, Class Counsel may continue to monitor (Class Counsel's Monitoring), solely for the purposes of ensuring compliance with this Consent Decree, for twelve months but shall not be entitled to attorneys' fees, costs or expenses for such monitoring. However, the Court may, upon Plaintiffs' motion showing good cause, extend Class Counsel's Monitoring as to any substantive provision for three-month increments. During Class Counsel's Monitoring, Defendants shall permit Class Counsel to interview a reasonable number of appointed counsel and members of the Defendants' staff who have an essential role in executing the requirements of this Consent Decree; counsel for Defendants may be present at these interviews. This Consent Decree shall terminate upon the conclusion of Class Counsel's Monitoring.

40. For the purposes of this Consent Decree, Defendants are in substantial compliance as to a substantive provision if any violation is minor or occasional, and is neither systemic nor serious. However, if a serious violation of the Consent Decree occurs, the Defendants are in substantial compliance if they promptly identify the violation and develop and implement a timely

and appropriate remedy that results in substantial compliance. Further there shall be a rebuttable presumption that the Defendants have achieved substantial compliance if the Defendants have implemented the Compliance Steps.

41. The Parties agree that upon Plaintiffs' petition, the Court may award reasonable attorneys' fees and costs directly incurred in enforcing and monitoring the terms of this Consent Decree, except that attorneys' fees and costs for monitoring shall be limited in accordance with the parties' separate agreement. The parties will make every effort to negotiate a resolution of Plaintiffs' attorneys' fees and costs. In the event these efforts fail, the Plaintiffs reserve the right to file a fee petition with this court, and the Defendants reserve the right to contest the Plaintiffs' rights to recover fees and costs.

42. In the event that the Defendants elect to forego screening as set forth in Paragraphs 17 and 21, and instead provide appointed counsel for all youth within 5 business days after the youth is served or after the youth's entry into DJJ custody, whichever occurs later, Paragraphs 13, 16-18, 20(i)-(iii), 21-23 and 25 of this Consent Decree shall not apply, and those paragraphs shall not be subject to monitoring or enforcement.

43. Defendants shall implement paragraphs 9-10, 19, 20, 24, and 26-30 within 90 calendar days of the date this Consent Decree is entered by the Court, and paragraphs 11 and 12 within 90 calendar days of the date this Consent Decree is entered by the Court or within 90 calendar days of when the necessary materials are completed, whichever occurs later. Defendants shall use their best efforts to implement paragraphs 5-7, 13-18, 21-23, 25, 31-37, 39, and 42 within a reasonable time, but, unless Defendants show good cause for any extension, no later than December 31, 2014. All other paragraphs shall be effective immediately.

44. The Parties agree that the terms of this Consent Decree will be submitted to the Court for approval, and the Court will retain jurisdiction to enforce the terms thereof.

IT IS SO ORDERED:

By: _____  Date: 8/28/2014
United States District Court Judge

Agreed to by the Parties as indicated by their or their counsel's signature below:

For the Plaintiffs:

_____
Date: August 4, 2014

Sheila Bedi
Alexa Van Brunt
Roderick and Solange MacArthur Justice Center
Northwestern University School of Law
375 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-1336

Alan Mills
Uptown People's Law Center
4413 N. Sheridan Road
Chicago, IL 60640
(773) 769-1410

By Defendant Adam Monreal:

_____
Adam Monreal
Date: 8/5/2014

By Defendant Candice Jones:

_____
Date: 8.7.14

Counsel for Defendants:
Michael T. Dierkes & Deborah Beltran
Assistant Attorneys General
General Law Bureau
100 W. Randolph, 13th Floor
Chicago, Illinois 60601
(312) 814-3672/3599

15